**Stephen W. SMITH and Cynthia Dodd a/k/a Cynthia Smith, Plaintiffs-Appellants,**

v.

**Robert R. PENA and the United States Army, Defendants-Appellees.**

**No. 79–1397.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1979.

Decided May 8, 1980.

---

1. 35 TCM 1309 (1976).

Janice Metros Johnston, McHenry, Ill., for plaintiffs-appellants.

Thomas P. Sullivan, U.S. Atty., Robert B. Breisblatt, Asst. U.S. Atty., Chicago, Ill., for defendants-appellees.

Before SWYGERT and WOOD, Circuit Judges, and ACKERMAN, District Judge *.

SWYGERT, Circuit Judge.

This appeal presents the question of whether one who seeks damages for personal injuries can invoke the Federal Tort Claims Act, 28 U.S.C. § 1346, by alleging

---

\* The Honorable J. Waldo Ackerman, United States District Judge for the Central District of Illinois, Springfield Division, is sitting by designation.

negligence when, were he to sue in an Illinois court, his claim would be governed by an absolute liability statute. Stated differently for clarity, we must determine the combined effect of the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), imposing tort liability on federal employees who commit negligent acts for which a private person would be liable under state law, and the Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43, § 135 (Supp.1979), imposing tort liability regardless of fault on a tavern owner who serves a person alcoholic beverages to the point of intoxication when that person while in an intoxicated state causes personal injury.

Plaintiffs brought this action against the United States Army, alleging that they were seriously injured in a car accident caused by the drunken driving of Army Sergeant Robert R. Pena who had been served liquor at an arsenal operated by the Army. Their complaint, brought under the Federal Tort Claims Act, alleges in the first count that Army employees negligently served alcoholic beverages to Pena which caused him to become intoxicated and that his intoxication caused the accident. In a second count, plaintiffs rely on the Illinois Dram Shop Act, alleging that the Army sold and served liquor to Pena and that as a result of consuming the liquor Pena became intoxicated, and while in a drunken condition he caused the accident. The Illinois Dram Shop Act does not require proof of negligence, and in the second count of their complaint plaintiffs do not allege negligence. In their brief plaintiffs state "that [under the FTCA] they are entitled to proceed on Count II under the Dram Shop Act if they are able to prove negligence on the part of the federal tavern keeper."

The district court dismissed both counts of the complaint for failure to state a claim upon which relief could be granted. The judge concluded that under Illinois law the Dram Shop Act is the exclusive remedy for acts within its coverage, so that no common law negligence claim (Count I) was possible. As to Count II, the court held that the FTCA cannot support a claim brought under the Dram Shop Act because the Dram Shop Act is a strict liability statute and the waiver of sovereign immunity under the FTCA does not extend to strict liability torts. The decision of the district court deprived plaintiffs of any claim against the Army.

We conclude that the Dram Shop Act does not deprive plaintiffs of a remedy within the jurisdictional coverage of the FTCA if they are able to meet the requirements of the Dram Shop Act and in *addition* prove that the Army employees were negligent according to Illinois law. We therefore vacate the dismissal of the complaint and remand to provide plaintiffs an opportunity to amend their second count to include an allegation of negligence.[1]

## I

Assuming the facts stated in the complaint to be true, Stephen and Cynthia Smith on January 27, 1978 were traveling on a public highway in a northern direction in an automobile driven by Stephen Smith when an automobile driven by Pena who was traveling in a southern direction, suddenly and without justification, crossed the center-median line and struck head on the vehicle in which plaintiffs were riding, causing serious personal injuries. Pena's unreasonable and unsafe manner of driving was directly caused by his excessive consumption of alcoholic beverages served him by Army employees at the Rock Island Arsenal, Rock Island, Illinois. At the time of the occurrence, the Army operated the facility at the Rock Island Arsenal which served alcoholic beverages to its patrons. Plaintiffs allege that the Army employees were grossly negligent in permitting Pena to consume an excess amount of alcoholic beverages. They further allege that these employees knew or should have known the excessive drinking habits of Pena and knew

---

1. We think this allegation is required, not because the Illinois statute requires it, but because the Federal Tort Claims Act requires a "negligent or wrongful act." *See* discussion *infra* at p. 876.

or should have known of his excessively inebriated condition and yet they permitted Pena to leave the arsenal driving an automobile.

## II

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), provides:

. . . [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The interpretation of a statute must start with the language of the statute itself. *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978); *Porter County Chapter of Izaak Walton League of America, Inc. v. Castle*, 571 F.2d 359 (7th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978). Moreover, a statute must be construed according to its ordinary meaning unless it can be said that Congress clearly did not intend it to have such meaning as determined from other parts of the statute or legislative history, or unless Congress could not have intended it to have such a meaning because it would render the statute unconstitutional. *United States v. Marathon Pipe Line Co.*, 589 F.2d 1305 (7th Cir. 1978).

The plain language of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), establishes a cause of action for personal injury caused by a negligent act of a Government employee if a private person would be liable under applicable state law. In this case, plaintiffs have alleged that negligent acts by employees of the Army caused their injuries. Further, there is a state law under which a private person would be liable in these circumstances. The Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43, § 135 (Supp.1979) provides:

Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person.

It is clear that this provision imposes absolute (strict) liability.

The problem in this case lies in the fact that whereas the Federal Tort Claims Act requires a negligent act, the Illinois Dram Shop Act does not. The district court held that because the state statute is based on absolute liability rather than negligence, a claim cannot be stated under the federal act. It was the opinion of the trial judge that

[T]he Dram Shop Act cannot support a claim under the FTCA because it is based on absolute liability, and the waiver of sovereign .immunity does not extend to such cases, *see Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

For the reasons that follow we disagree. We are of the view that *Dalehite* does not bar the instant action.

In *Dalehite* the Supreme Court held that the plaintiff's claim was precluded on two grounds. First, no negligence action was possible because the type of activity engaged in by the United States was held to be within the "discretion" exception to the FTCA, 28 U.S.C. § 2680(a).[2] Second, the plaintiff's alternative claim, based on the

---

**2.** Section 2680 of the FTCA provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to—
(a) Any claim based upon an act or omission of an employee of the Government, . . . based upon the exercise or performance or

the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

theory of absolute liability, was barred because the FTCA required "some brand of misfeasance or nonfeasance, and so could not extend to liability without fault . . ." 345 U.S. at 45, 73 S.Ct. at 972. The case at bar is distinguishable, first, because the negligent acts of the Army employee were not within the "discretion" exception to the FTCA. Second, although the Dram Shop Act imposes absolute liability, plaintiffs do not rest their claim on a theory of liability without fault. Rather, plaintiffs say that although their claim falls within the parameters of the Illinois statute, they are prepared to prove that the Army employees were in fact negligent. To clarify these distinctions, further discussion of *Dalehite* is necessary.

There a personal injury action was brought under the FTCA to recover damages for a death resulting from an explosion of ammonium nitrate fertilizer produced for export at the instance of and according to the specifications of the United States. The trial court found the Government to have been negligent in drafting and adopting the fertilizer export plan as a whole and in various phases of the manufacturing and shipboard loading processes. The Supreme Court held that such a negligence action was barred by the exception provided in section 2680 of the FTCA, 28 U.S.C. § 2680(a).[3] The Court interpreted the section to include determinations by executives or administrators in establishing plans, specifications, or schedules of operations, as well as the acts of subordinates in carrying out those operations. Because the alleged negligence was found to have resulted from plans and directives formulated by administrators exercising discretionary functions, no tort action was possible. (In the case at bar, the Army was operating an arsenal which dispensed alcoholic beverages. The Army does not contend that such activity falls within the discretion exception to the FTCA.) After holding that the negligence counts were barred, the Supreme Court turned to the plaintiff's contention that the Government was liable without

proof of fault as a result of owning an inherently dangerous commodity or engaging in an extra-hazardous activity. This absolute liability contention was disposed of summarily at the end of a lengthy opinion. The Court held that the FTCA required a negligent act and could not apply where the degree of care used in performing the activity was irrelevant. It is this holding that the trial judge in the case at bar relied upon in dismissing plaintiffs' claim.

Liability under the Dram Shop Act depends on activity not unlike the inherently dangerous commodity and the extra-hazardous activity advanced in *Dalehite* inasmuch as the statute does not require proof of negligence. If plaintiffs were contending that their Dram Shop Act claim should succeed without proof of fault, the *Dalehite* case would indeed stand in their way. But here claimants, unlike the plaintiff in *Dalehite*, do not contend that their action should succeed on the basis of absolute liability; rather, they allege negligent conduct. Accordingly, plaintiffs' claim conforms to the holding of *Dalehite* that the FTCA requires "a negligent act" or "some brand of misfeasance or nonfeasance." 346 U.S. at 45, 73 S.Ct. at 972.

To distinguish *Dalehite* from the case at bar does not, however, solve the problem before us. We return to the language of the FTCA. That Act provides an action for injuries caused by a *"negligent . . . act or omission of any Government employee while acting within the scope of his employment under circumstances where the United States, if a private person*, would be liable . . . in accordance with the law of the place where the act or omission occurred."* (emphasis added.) 28 U.S.C. § 1346(b). Giving these words their ordinary meaning, no dispute can arise over the fact that in the circumstances depicted here a private tavern operator would be liable under the Illinois Dram Shop Act. This proposition does not completely answer the problem, however, because the Federal Tort Claims Act, unlike the Dram Shop Act, requires that the federal defendant's con-

3. *Id.*

duct be negligent, and under the federal act negligence must be determined according to Illinois law.[4]

We must therefore take an added step and decide whether in the circumstances here a tavern operator in Illinois would be found negligent under Illinois law notwithstanding the existence of the Dram Shop Act, making him liable regardless of fault. That is to say that despite the fact that Illinois courts do not make negligence determinations under the Dram Shop Act because it is an absolute liability statute, we must decide whether an Illinois court, if faced with the issue of deciding negligence, would find the Army's conduct to be negligent in the circumstance of this case.

That the Illinois courts have not required negligence in Dram Shop Act cases does not mean that a federal court may not decide that the Army employees were negligent according to Illinois law.[5] As in a diversity case, a federal court in a Federal Tort Claims suit may evaluate and look to whatever data the state supreme court would consider in determining what constitutes negligence in respect to tavern operators. *See Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977).

### III

Although the Dram Shop Act was first enacted in 1872, it was not until 1961 that the Illinois Supreme Court ruled definitely that the statute provided the exclusive civil remedy against tavern operators for injuries "by an intoxicated person or [in consequence of] intoxication." *Cunningham v. Brown*, 22 Ill.2d 23, 24, 174 N.E.2d 153, 154–55 (1961). In the course of the court's opinion, Justice House outlined the state of the law of Illinois before the enactment of the Dram Shop Act: "No case has been

cited . . . nor have we found one where, prior to the enactment of the original Dram Shop Act of 1872 . . . recovery was sought from a supplier of alcoholic liquor for damages inflicted by an intoxicated person . . . ." *Cunningham* at 25, 174 N.E.2d at 154. The court then referred to the plaintiffs' argument that if a sale knowingly is made to an intoxicated person, the sale and consumption are merged and become the act of the seller. Justice House responded:

This brings us to the question of whether we should recognize a common-law remedy in addition to the remedy provided in section 14. The plaintiffs concede that the common law provided no remedy for the mere sale of alcoholic liquor to the ordinary man, either on the theory that it was a direct wrong or on the ground that it was negligence, which imposes a legal liability on the seller for damages resulting from intoxication. . . . [Citing cases.] They point out that the reason generally given for the rule is that the drinking, not the selling, is the proximate cause of the intoxication. . . . They argue however that where a sale is made to one who is intoxicated or insane and the incapacity of the consumer to choose is known to the vendor, or should be known, then the sale and consumption are merged and in reality become the act of the seller and the proximate cause of the intoxication.

The plaintiffs' argument has some merit, and if no more were involved than laying down a new rule of liability it would warrant more serious consideration.

*Cunningham* at 29–30, 174 N.E.2d at 157.

The State Supreme Court in an earlier case had as a matter of fact recognized

---

**4.** A negligent tavern operator will always be liable under the Dram Shop Act although proof of negligence is not required. The significance of the absolute liability theory upon which the Dram Shop Act is based is that non-negligent *as well as* negligent tavern owners are liable. Because the Dram Shop Act is an absolute liability statute, it imposes liability on more persons than would a traditional negligence cause of action. For the negligent tavern oper-

ator, the result is identical. It is clear then that the complaint here alleges circumstances in which plaintiffs could have recovered against a private person defendant according to Illinois law.

**5.** This is not to say that in some circumstances a federal court cannot decide that Illinois law would never recognize negligence by a tavern operator.

negligence by a tavern operator under the Dram Shop Act. *Earp v. Cilly*, 217 Ill. 582, 75 N.E. 552 (1905). There the court held that if "gross negligence" was found on the part of a tavern operator in serving alcoholic beverages to a person already intoxicated, punitive damages—then allowable under the Dram Shop Act—were warranted. We note that in *Earp*, the Illinois Supreme Court was not faced with the issue of whether there was a common law negligence action, because the plaintiff's remedy was provided by the Dram Shop Act. Nonetheless the court determined that the tavern operator was negligent for purposes of assessing punitive damages. Our case is like *Earp* and unlike *Cunningham* in that we are not required to find an Illinois common law negligence action. Here plaintiffs' remedy is provided by the Federal Tort Claims Act. We must determine whether the tavern operator was negligent because negligence (determined according to Illinois law) is an element of the federal cause of action.

In 1951 an Illinois appellate court held that the Dram Shop Act should not be given extraterritorial effect. *Eldridge v. Don Beachcomber, Inc.*, 342 Ill.App. 151, 95 N.E.2d 512 (1951).[6] The *Eldridge* holding was precursory to another Illinois appellate court decision that is of importance to our discussion. In *Colligan v. Cousar*, 38 Ill. App.2d 392, 187 N.E.2d 292 (1963), the plaintiff brought suit in the Circuit Court of Cook County, Illinois, alleging that he was struck in Indiana near the Illinois-Indiana state line by an automobile operated by an intoxicated person who had driven the automobile directly from a tavern located in Illinois. The complaint contained two counts. Count I sought relief against the tavern owner under the Illinois Dram Shop Act; Count II was based on common law negligence. The trial court dismissed the action, sustaining the defendants' contention that as to the first count the Dram Shop Act was inapplicable because the plaintiff was injured in Indiana, citing *El-*

*dridge v. Don Beachcomber, supra*; and as to the second count, the common law furnished no relief because the Dram Shop Act provided the only remedy against a tavern owner for injuries to a person by an intoxicated person. The appellate court affirmed the dismissal of the first count, but it reversed the dismissal of the second count.

Justice McCormick applied traditional conflict of law rules in analyzing the claim alleged in the second count. He first found that there was no Indiana common-law rule on the question. He then concluded that the court should determine and apply the common law of Illinois in light of the fact that the Dram Shop Act could not operate extraterritorially. He framed the question thus: "It is incumbent upon this court to determine what the common law of Illinois would be had there been no Dram Shop Act in existence. We have no decision directly in point on this question." *Colligan* at 405, 187 N.E.2d at 298. After alluding to a number of authorities from other jurisdictions and treatises, Justice McCormick answered the question:

. . . we hold that the acts of the defendants in furnishing the intoxicating liquors to the tortfeasors were acts which, had there been no Dram Shop Act in existence in the State of Illinois, would give rise to a common law cause of action in this State on behalf of the plaintiff allegedly subsequently injured by the acts of the said tortfeasors as a result of their intoxicated condition. We must presume that the common law of Indiana, where the accident occurred, was the same as the common law of Illinois. The genius of the common law is that it is constantly expanding to meet new and unique conditions. The spirit of the common law is not dead. It lives and grows as conditions warrant.

*Colligan* at 414, 187 N.E.2d at 302.

Although the main concern in *Colligan* was finding a remedy under Illinois law, that

---

6. The issue in *Eldridge* was whether liability attached to a tavern operator where an intoxicated customer caused a motor vehicle accident in Indiana which resulted in personal injuries.

case does furnish a guide to the path we think the Illinois Supreme Court would follow if faced with the question now before us.

■ Liability under the Federal Tort Claims Act not only depends upon a finding of a "negligent or wrongful act" but also upon a finding that the negligent act "caused" the injury. Negligence and proximate cause are, of course, distinct legal concepts. Indisputably, the Dram Shop Act contravenes some traditional notions of proximate cause. Therefore we are required to look more critically at the problem and decide what circumstances the Illinois Supreme Court, if confronted with the problem, would deem necessary to supply a nexus between the injuries and the conduct of the tavern operator.

The Illinois Supreme Court in *Cunningham v. Brown, supra,* recognized the distinction between selling alcoholic beverages to a sober person and to one who is intoxicated. It again recognized this distinction in *Colligan v. Cousar, supra.* It should also be noted that the Illinois Supreme Court in an analogous situation found a negligent first actor to be the proximate cause of injuries where an intervening second actor was the one who inflicted the harm. In *Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 117 N.E.2d 74 (1954), the court held that a common law action would lie against the owner of a parked car who left his keys in it, where a third person took the car and while driving it injured another. The owner's act in negligently leaving his keys in the car was held to be a proximate cause of the injury.

Further the distinction we have discussed and its legal significance have been generally acknowledged.

At common law it is not a tort to either sell or give intoxicating liquor to ordinary able-bodied men, and it has been frequently held that, in the absence of statute, there can be no cause of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished. The reason usually given for this rule is that the drinking of the liquor is the proximate cause of the injury, not the furnishing of it. However, the common law rule is generally qualified to the extent of giving a right of action against one furnishing liquor in favor of those injured by the intoxication of the person so furnished, where the liquor was given or sold to a person who was in such condition as to be deprived of his will power or responsibility for his behavior, or to a habitual drunkard. . . .

20 Am.Jur. 520.

■ The foregoing considerations lead us to the view that the Illinois Supreme Court if faced with the question before us, would hold that when a tavern operator knowingly sells liquor to a person already intoxicated and therefore not in full control of his actions and that person thereafter causes injuries, the operator is guilty of negligence which proximately caused the injuries inflicted. Accordingly, we hold that if plaintiffs can prove that under Illinois law the Army employees were negligent in serving drinks to Pena because Pena was intoxicated or for any other reason which would negate his self-control and thus establish the required causation, their FTCA action can be maintained.

To reach this result there is no need to go beyond the plain words of the federal statute. Were policy considerations relevant, however, they too would demand the result we have reached. Absolute liability exists under the Dram Shop Act because the Illinois legislature wished for both penal and remedial purposes to impose liability on more tavern operators, not fewer, than if a negligence standard were used. It would be incongruous if in circumstances where the state has cast its net wider than in a traditional negligence action, a Government employee is automatically excused from liability even if his negligence can be proved.

Although plaintiffs must prove more than is required by the Illinois Dram Shop Act, namely negligence, they cannot avoid any Dram Shop Act requirements because that Act sets out the circumstances in

which a tavern operator is liable in Illinois.[7] In addition, plaintiffs are limited by the Dram Shop Act's provision relating to damages. Under the Federal Tort Claims Act damages must be assessed according to state law. *Felder v. United States,* 543 F.2d 657 (9th Cir. 1976); *Mosley v. United States,* 538 F.2d 555 (4th Cir. 1976). Illinois has set a statutory maximum in claims against tavern operators for injuries caused by intoxication.[8] Recovery under Illinois law is limited regardless of negligence. Because a plaintiff who sues a negligent or nonnegligent private tavern operator cannot recover more than the statutory maximum, plaintiffs' recovery in the instant action must also be so limited.

The judgment of the district court is vacated to enable plaintiffs to amend their complaint. The cause is remanded for further proceedings consistent with this opinion.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

Although I recognize in these circumstances some justification in providing plaintiffs with a remedy against the United States, I do not believe we are at liberty to custom-fashion one just for their purposes. The plaintiffs, however, would not be left without any recognized remedy as under Illinois law there exists a cause of action against the army sergeant.

The question is whether the Federal Tort Claims Act provides relief against the United States for an alleged violation of the Illinois Dram Shop Act. The Federal Tort Claims Act requires as a prerequisite to liability a "negligent or wrongful act" by a government employee while acting within the scope of his employment.[1] In addition, the Act provides that a cause of action against the United States lies only "in accordance with the law of the place where the act or omission occurred." Starting with the assumption that the legislative purpose is expressed by the ordinary meaning of that statutory language, the Supreme Court in *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), found "that it would be difficult to conceive of any more precise language Congress could have used to *command application of the law of the place where the negligence occurred* than the words it did employ in the Tort Claims Act." (Emphasis added.)

Bearing in mind as we must that it is axiomatic that waivers of sovereign immunity by Congress are not to be construed expansively, but are to be strictly interpreted, *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1940); *United States v. Sheehy,* 541 F.2d 123 (1976), we must look to the law of Illinois as "the law of the place where the negligence occurred" to see if it may support a claim under the Act.

As the majority concedes, the Illinois Dram Shop Act[2] is a strict liability statute. The presence or absence of negligence is totally irrelevant to that statute. The majority further concedes that the Dram Shop Act is the exclusive civil remedy in Illinois against tavern operators for intoxication injuries. Since the Federal Tort Claims Act requires negligence but the Dram Shop Act does not, perhaps some support may be found in the common law of Illinois. The Illinois Supreme Court, in a case cited by the majority, while recognizing that there

---

**7.** The remedy provided by the FTCA extends only to "circumstances where . . . a private person, would be liable . . . in accordance with the law of the place where the act . . . occurred."

28 U.S.C. § 1346(b).

**8.** The Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43 § 135 (Supp.1979) provides:

In no event shall the judgment or recovery under this Act for injury to the person or to the property of any person as aforesaid exceed $15,000, and recovery under this Act for loss of means of support resulting from the death or injury of any person, as aforesaid, shall not exceed $15,000 for each person so injured where such injury occurred prior to July 1, 1956, and not exceeding $20,000 for each person so injured after July 1, 1956.

**1.** 28 U.S.C. § 1346(b).

**2.** Illinois Dram Shop Act, Ill.Rev.Stat. ch. 43, § 135.

may be "some merit" in creating a new rule of liability, however, has clearly held there is and has been no common law of Illinois on the subject.

> The historical background of the [Dram Shop Act] seems to disclaim any notion that it was intended to complement a common-law remedy against the tavern owners and operators. We would be delving in judicial metaphysics if we were to say that the legislature intended to provide a remedy in addition to a common-law remedy which existed but had not as yet been declared by the courts. Legislative intent must be ascertained through examination of the practical considerations to which the legislature directed itself when enacting section 5 of the original statute. These considerations are: the fact that the legislature found no common-law precedent for the liability of a tavern operator for the mere sale of intoxicating liquor, and the fact that the temperance forces were demanding that the cost of the intoxicating liquor should bear the damages it caused. The inescapable conclusion is that the legislature did not intend the act to be complementary to a common-law right it knew nothing about, but, on the contrary, intended to create a remedy in an area where it believed none existed.

*Cunningham v. Brown,* 22 Ill.2d 23, 28–29, 174 N.E.2d 153, 156 (1961). In the case of *Colligan v. Cousar,* 38 Ill.App.2d 392, 187 N.E.2d 292 (1963), also cited by the majority, involving a conflict of law question, the appellate court for the First District speculated about what the Illinois common law might have been in the absence of the Dram Shop Act. That case is of no consequence to us since it must be recognized that Illinois does not in fact have any common law on the subject, but on the other hand does have the Dram Shop Act as alleged in plaintiffs' complaint.

To avoid this "law of the place" the majority begins by stating that "we are not required to find a common law negligence action" resulting from intoxication because plaintiffs' remedy is provided by the Federal Tort Claims Act. It seems to me we have only circled around Illinois law and are back where we started.

Recognizing that the Federal Tort Claims Act specifically requires a negligent or wrongful act which must be shown to be the proximate cause of the injury, the majority then attempts to graft those two alien concepts on to the Illinois Dram Shop Act. To accomplish that, the majority in addition to *Colligan v. Cousar, supra,* the inapplicable conflicts case, and *Cunningham v. Brown, supra,* which is adverse to plaintiffs, relies on *Ney v. Yellow Cab Co.,* 2 Ill.2d 74, 117 N.E.2d 74 (1954). *Yellow Cab* stands for nothing more than the proposition that a common law action lies against an owner who left the keys in his car permitting a third party to take the car resulting in injury to another. Neither the Dram Shop Act nor the Federal Tort Claims Act are involved in any way in that negligence case.

The trial court relying on *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), held that the waiver of sovereign immunity did not extend to an action under the strict liability provisions of the Illinois Dram Shop Act. The majority distinguishes *Dalehite. Dalehite,* nevertheless, reveals a recognition by the Supreme Court that the doctrine of strict liability is to be distinguished from a negligence theory. 346 U.S. at 44, 73 S.Ct. at 972. Later, the Supreme Court in *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1971), reaffirmed *Dalehite* saying that liability under the Federal Tort Claims Act is "not to be broadened beyond the intent of Congress by dressing up the substance of strict liability for ultra-hazardous activities in the garments of common-law trespass. *Id.* at 802, 92 S.Ct. at 1902. The Court concluded that the Act does "not authorize the imposition of strict liability *of any sort* upon the Government." (Emphasis added.) *Id.* at 803, 92 S.Ct. at 1902.

The majority then proceeds to hold that "if plaintiffs can prove that under Illinois law the Army employees were negligent in serving drinks to [the army sergeant] be-

cause [the sergeant] was intoxicated or for any other reason which would negate his self-control and thus establish the required causation," then plaintiffs have established the negligence and causation the Federal Tort Claims Act requires. Up until now there has been no negligence law in Illinois, statutory or common law, applicable to these circumstances, and therefore no case law interpretation or guidance in the application of a negligence standard. Therefore, further federal case law development in interpreting and applying the majority holding will be necessary. The Dram Shop Act as it is written is recognized by the majority to the extent that it imposes a limitation on damages which the majority holds limits plaintiffs' damages. I believe it would have been more consistent for the majority also to have disregarded the penal damage limitation of the Dram Shop Act. I know of no statutory limitation in Illinois on damages resulting from negligence. Some of the Illinois Dram Shop Act is held to be applicable, some of it is ignored. I do not believe Illinois law submits so easily to this creative manipulation in order to provide a sufficient "law of the place" to support a Federal Tort Claims Act cause of action against the United States.

The Federal Tort Claims Act requires that the alleged negligent government employee be acting within the scope of his employment. Plaintiffs' amended complaint also fails to satisfy that requirement.

In my view the majority has drafted and enacted an original hybrid law for Illinois with no other purpose than to present to plaintiffs a cause of action under the Federal Tort Claims Act. Were I a member of the Legislature of the State of Illinois, I might vote for it, but since I am not, I respectfully dissent.